## PERCY v. COCKRILL et al.

### (Circuit Court of Appeals, Eighth Circuit.    January 23, 1893.)

### No. 99.

1. LIMITATION OF ACTIONS—SUIT TO ENFORCE A CONSTRUCTIVE TRUST.
   A suit brought in Arkansas by a daughter whose father left all his property to his sons, "having full confidence in their disposition to deal justly and liberally," and leaving it "to them to make proper and suitable provision for their sisters," against the collusive purchaser from her brothers, is not an action for the recovery of real property, within the meaning of the statute of limitations of Arkansas, (Mansf. Dig. § 4471,) but is an action founded on an implied contract or liability, and as such is limited by section 4478 to three years. Millington v. Hill, (Ark.) 1 S. W. Rep. 547, followed.

2. SAME.
   The statute began to run against the daughter, whose husband had taken no steps to reduce her right to possession, from the passage of the act removing the disabilities of married women, (Mansf. Dig. §§ 4624, 4625,) in 1873, and not from the time of her subsequent discoverture. Garland Co. v. Gaines, (Ark.) 2 S. W. Rep. 460, followed.

3. SAME.
   Information as to the terms of the will, and the finding of the collusive purchaser in possession, claiming title free from the burden of the alleged trust in the daughter's favor, was sufficient notice to both the daughter and her husband to set the statute running against the husband immediately, and against the daughter on the removal of her disabilities.

4. LACHES—FEDERAL COURTS—FOLLOWING STATE PRACTICE.
   A federal court sitting in equity ought not to enforce the constructive trust and equitable lien on real property arising in favor of a daughter whose father left all his property to his sons, "having full confidence in their disposition to deal justly and liberally," and "leaving it to them to make suitable provision for their sisters," when she has, without excuse, remained silent 15 years longer, after discovery of the substantial facts, than was sufficient to bar the action under the state statute of limitations, and when all the witnesses to the transaction, except herself, are dead. Lemoine v. Dunklin Co., 51 Fed. Rep. 487, 2 C. C. A. 343, followed.

5. FEDERAL COURTS—FOLLOWING STATE DECISIONS.
   The federal courts, in the construction and application of state statutes of limitation and married women's acts, should follow the decisions of the highest courts of the states, in cases where no federal law or constitutional question is involved.

6. CONSTITUTIONAL LAW—MARRIED WOMEN'S ACTS—RIGHTS OF THE HUSBAND.
   By the common law of Arkansas, and of most other states, a husband has no vested interest in his wife's choses in action, which he has taken no steps to reduce to his possession; and the married women's act of 1873, (Mansf. Dig. § 4624,) making such rights the sole property of the wife, and taking away all the husband's interest therein, violates no constitutional right of the husband, although the marriage took place before the passage of the act. Criscoe v. Hambrick, (Ark.) 1 S. W. Rep. 150, and Shryock v. Cannon, 39 Ark. 435, distinguished.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

In Equity.   Bill by Nancy Armstrong Percy against Sterling R. Cockrill and others to recover a one-fifth interest in certain realty, with the rents and profits.   Defendant Cockrill died pending the suit, and the cause was revived in the name of Sterling R. Cockrill, Jr., his executor and trustee.   A demurrer was sustained, and the bill dismissed.   Complainant appeals.   Affirmed.

## Statement by SANBORN, Circuit Judge:

This is an appeal from a decree of the court below sustaining a demurrer to, and dismissing, the appellant's bill in equity. The bill was filed January 15, 1891, and alleges that appellant's father, William Armstrong, died testate June 13, 1847, leaving surviving him three sons and three daughters. That he died seised of a plantation containing 1,663 acres of land adjoining Pine Bluff, Ark., and a large number of slaves, and some other personal property, then on the plantation. That his will, which was duly probated, was as follows:

"In the name of God. Amen. I, William Armstrong, being of sound mind, in view of the uncertainty of human life, do hereby make and declare this my last will and testament, in the words following, to wit: First. I hereby bequeath and devise all my estate, real and personal, including all my effects of every description whatever, subject to the limitations hereinafter set forth, to my sons, James Trooper Armstrong, David I. Armstrong, and Frank Wells Armstrong, whom I constitute and appoint my sole executors. Second. It is my wish and desire that my plantation below Pine Bluff, including the adjoining lands and all the appurtenances, should not be sold or disposed of, but remain and continue as at present, to be, together with my negroes and all my other effects, under the joint management and control of my executors aforesaid; not to be divided, but to remain as an entire estate until my son Francis becomes of age; and, in the event of either of my said sons dying without issue before that, the survivors or survivor to succeed as heirs and executors. Third. Having full confidence in my sons aforesaid, and in their disposition to deal justly and liberally, I leave it to them to make proper and suitable provision for their sisters, Susan, Margaret, and Nancy. Fourth. It is my wish and desire that my grandson, William Armstrong Cocke, be brought up at the cost and expense of my estate. In witness whereof, I have hereunto set my hand and seal, on this 10th day of June, 1847."

That the sons named in the will deemed the legal title and beneficial ownership of the property devised by this will in themselves, and proceeded to borrow money for their several individual purposes, and to secure the payment thereof mortgaged the property in 1849, when the youngest son, Frank, had attained his majority, for $10,000, and in 1854 for $30,008.64. That in February, 1856, they sold, and undertook to convey, by a deed made in their own right, and as executors of the will of their father, to the late defendant Sterling R. Cockrill, the undivided two thirds of the property, in consideration of $13,000, to be paid by him to James T. Armstrong and Frank W. Armstrong, and the assumption by him of two thirds of the debts of the estate and of the incumbrances then upon the property; and that in May, 1858, David I. Armstrong, who had married a daughter of Mr. Cockrill in 1853 or 1854, and who claimed to own the remaining third of the estate, and his father-in-law, made a partition between themselves of the entire property and estate. That a portion of this land has since been platted as Cockrill's addition to the city of Pine Bluff; and more than 60 persons are made defendants, who claim title to, or liens upon, some of it, under Mr. Cockrill and David I. Armstrong.

The bill alleges that the late defendant Cockrill, before and when he purchased the two-thirds interest in this property, knew that the young Armstrongs were expending and wasting the estate; that the mortgages they had executed thereon did not secure any debts of the deceased, William Armstrong; that none of the moneys they derived therefrom, or from their sale to him, went, or were intended to go, to the complainant; that they had made no suitable provision for her, and did not intend so to do, but had expended, and intended to expend, the moneys they derived from the estate, in utter disregard of the will, and the trust in complainant's behalf thereby imposed, and that they did not intend to provide for her out of the one third of the estate remaining unsold.

The bill also alleges that Susan Armstrong died intestate and without issue in 1852; that Margaret died intestate in 1856, leaving an infant son by her husband, Barrow; that neither of these daughters had attained their majority when they died; that the three brothers subsequently died insolvent; that at the time of her father's death the complainant was 11 years old; that for a

few years thereafter she resided on the plantation; that she was then sent to Maryland to school, and at the age of 19 took up her residence in Nashville, Tenn., with relatives, where she resided until she was married, on February 23, 1858; that she attained her majority in 1857; that her husband died July 19, 1888; that she and her sisters were supported and educated during their minority by her brothers; that "she was kindly and tenderly raised, in a manner befitting her station in life, and the relations between her brothers and herself were of the most affectionate character,—questions of property or money matters were never discussed between them,"—and that she was entirely ignorant of all the mortgages, conveyances, and transactions set forth in the bill until the winter of 1858–59, when she and her husband went to Arkansas to visit her brothers; that she then learned for the first time that the late defendant Cockrill was in the possession of her father's home, claiming to own the same; and that it was only recently that she discovered the other facts set out in the bill.

The relief sought by this bill is a decree that the complainant is entitled to an undivided one fifth of each lot and tract of land that belonged to William Armstrong at his decease, in 1847, and a judgment against each of the defendants for one fifth of any rents, profits, or personal property they have respectively received from any property that he then owned.

The grounds of the demurrer were that the bill did not show that the complainant was entitled to any relief; that the suit was barred by the statute of limitations; that the complainant was barred from prosecuting her suit by her laches; and that it appeared from the bill that, if she had any right of action, she had an ample remedy at law. The only error assigned is that the court below sustained the demurrer and dismissed the bill. After the commencement of the suit the defendant Sterling R. Cockrill died, and the cause was revived in the name of Sterling R. Cockrill, Jr., as his executor and trustee.

J. M. Moore, for appellant.

U. M. Rose, (G. B. Rose, on the brief,) for appellees.

Before SANBORN, Circuit Judge, and SHIRAS, District Judge.

SANBORN, Circuit Judge, (after stating the facts.) The first question suggested by this record is,—conceding for the present that this will created a trust in favor of the complainant which charged the property devised to her three brothers with the burden of making suitable provision for her; that this cause of action did not accrue until she discovered the late defendant Cockrill in possession of her father's home in 1858, claiming to own it under the conveyances from her brothers to him; and that the charges of his knowledge of the violation of this trust, and of his collusion with those brothers to violate it, through these conveyances, contained in the bill, are sufficient to charge the real estate in his hands with the trust in complainant's favor, without stopping now to consider or decide the questions these propositions present,—can the complainant at this late day maintain this suit?

The will which created the charge or trust on which this bill is founded was probated in 1847. The sale under it to the late defendant Cockrill, which complainant now avers charged him as a constructive trustee for her benefit, was made in 1856. The complainant and her husband had full notice of it, and knew that under it Cockrill was in possession of her father's home, claiming to own it, in 1858. Twenty-three years after she received this notice, and on the 15th day of January, 1891, she filed this bill, and then first complained, so far as the record shows, that the mortgages and deeds made by her

brothers, as devisees and executors of their father's will in 1849, 1854, and 1856, were violations of the trust imposed on them by the will, and constructive frauds upon her rights. That these brothers made suitable provision for her sisters until they died; that they provided her with a liberal support and education during her minority, and kindly and tenderly raised her, in a manner befitting her station in life,—her bill alleges. That they were ignorant that, in the execution of the mortgages and deeds now complained of, they were violating any provision of the will, and believed themselves to be the legal and beneficial owners of all the property of the estate under this will, and that they had the right to mortgage, sell, and convey it as their own, the bill admits. All these brothers died insolvent years ago. The sisters Susan and Margaret have been dead for 20 years. The purchaser, Cockrill, died since this suit was commenced. None of the six children named in the will are now living but the complainant; and probably no one but the complainant now knows, if indeed she does, how liberal and expensive were the provisions made by the brothers for the support and education of the complainant and her sisters. Some of the land which these brothers conveyed to the late defendant Cockrill in 1856 has become a part of a city, and doubtless all of it is greatly enhanced in value. So general has been the traffic in and distribution of it by conveyances under Cockrill and David I. Armstrong that more than 60 persons are made defendants to this bill, as claimants under them to a title in, or a lien upon, some part of this property. Should a court of equity, after this great lapse of time, after the death of so many important witnesses, and in view of the changed condition and value of this land, be moved to enforce a trust or charge against the immediate or remote purchasers under these brothers, in favor of a complainant who has delayed so long?

The rule that length of time is no bar in equity to a suit for relief from an actual fraud or a constructive trust, clearly proved, which has been fraudulently and successfully concealed from the party aggrieved, has no application to this case subsequent to 1858. One of the qualifications of this rule is that the facts constituting the fraud or trust must have been fraudulently and successfully concealed from the injured party. Badger v. Badger, 2 Wall. 87, 92. And notice of facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. "Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. Where a person has sufficient information to lead him to a fact, he shall be deemed conversant with it." Kennedy v. Green, 3 Mylne & K. 699, 722; Wood v. Carpenter, 101 U. S. 135, 141; Rugan v. Sabin, (decided by this court December 6, 1892,) 53 Fed. Rep. 415; Parker v. Kuhn, 21 Neb. 413, 421–426, 32 N. W. Rep. 74; Wright v. Davis, 28 Neb. 479, 483, 44 N. W. Rep. 490. The knowledge complainant and her husband acquired during their visit to Arkansas, in 1858, that Cockrill was in possession of the property, claiming to own it, must be deemed, in the eye of

the law, to be notice of all the facts they have since learned, relative to this case.

In cases of concurrent jurisdiction the federal courts, sitting in equity, consider themselves bound by the statutes of limitations which govern courts of law in like cases, and this rather in obedience to the statutes than by analogy. In many other cases they act upon the analogy of the statutory limitations at law. Generally courts of equity act, or refuse to act, in analogy to the statute, and they will not be moved to set aside a fraudulent transaction, or to enforce a constructive trust, at the suit of one who has been quiescent during a period longer than that fixed by the statute of limitations, after the complainant had knowledge of the fraud or trust, or after he was put upon inquiry, with the means of knowledge accessible to him. Wagner v. Baird, 7 How. 234, 257; Godden v. Kimmell, 99 U. S. 201, 210; Burke v. Smith, 16 Wall. 390, 400; Kirby v. Railroad Co., 120 U. S. 130, 7 Sup. Ct. Rep. 430; Boone Co. v. Burlington & M. R. R. Co., 139 U. S. 684, 692, 11 Sup. Ct. Rep. 687.

What, then, was the statute of limitations of the state of Arkansas, applicable to a suit of this character, or to an action at law for a like cause, between 1847 and 1891? By act of January 4, 1851, the legislature of Arkansas provided as follows:

"No person or persons, or their heirs, shall have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments, but within seven years next after his, her, or their right to commence, have, or maintain such suit shall have come, fallen, or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements, or hereditaments, shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed: provided, that if any person or persons that are or shall be entitled to commence and prosecute such suit or action in law or equity be, or shall be, at the time said right or title first accrued, come or fallen within the age of twenty-one years, feme covert, or non compos mentis, that such person or persons, his or their heirs, shall and may, notwithstanding said seven years may have expired, bring his or her suit or action, so as such infant, feme covert, or non compos mentis, his or their heirs, shall bring the same within three years next after full age, discoverture, or coming of sound mind." Section 4471, Mansf. Dig.

By act of March 5, 1838, the legislature of that state provided as follows:

"The following actions shall be commenced within three years after the cause of action shall accrue, and not afterwards: First. All actions founded upon any contract or liability, express or implied, not in writing." Section 4478, Mansf. Dig.

By act of December 14, 1844, the legislature of that state provided as follows:

"If any person entitled to bring any action in this or any other act of limitations now in force, specified, shall, at the time of the accrual of the cause of action, be under twenty-one years of age, or insane, or a married woman, or imprisoned beyond the limits of the state, such person shall be at liberty to bring such action within the time now specified by law or in this act for bringing such action after such disability may be removed." Section 4489, Mansf. Dig.

By act of April 28, 1873, the legislature of that state provided as follows:

"The property, both real and personal, which any married woman now owns, or has had conveyed to her by any person in good faith, and without prejudice to existing creditors, or which she may have acquired as her sole and separate property; that which comes to her by gift, bequest, devise, grant, or conveyance from any person; that which she has acquired by her separate business, labor, or services, carried on or performed on her sole or separate account; that which a married woman in this state holds or owns at the time of her marriage; and the rents, issues, and proceeds of all such property, shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected, and invested by her in her own name, and shall not be subject to the interference or control of her husband, or liable for his debts, except such debts as may have been contracted for the support of herself or her children by her as his agent." Section 4624, Mansf. Dig.

"A married woman may bargain, sell, assign, and transfer her separate personal property, and carry on any trade or business, and perform any labor or services, on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name, and she may alone sue and be sued in the courts of this state on account of the said property, business, or services." Section 4625, Id.

In the construction and application of these statutes to the causes of action arising under them, the federal courts follow unhesitatingly the decisions of the highest judicial tribunal of the state which enacted them, where, as in the case at bar, there is no federal law or constitutional question involved. Dempsey v. Township of Oswego, 51 Fed. Rep. 97–99, 2 C. C. A. 110. The supreme court of Arkansas, which is the highest judicial tribunal of that state, has repeatedly held that, in actions for the recovery of real property which accrued prior to 1873, and which were governed by the act of 1851, (section 4471, Mansf. Dig.,) the disability of a married woman was not removed by the act of 1873. In Hershy v. Latham, 42 Ark. 305, 308, that court said:

"The wording of our statute limiting the time for the bringing of the action for the recovery of real property is peculiar. It gives the married woman three years after discoverture; that is, after the release from the bonds of matrimony by the death of her husband, or by divorce. If the language had been, 'three years after the removal of her disability,' we might very well hold that her disability could be removed by an act of the legislature, as well as by the husband's death."

—And accordingly held that a married woman was by the act of 1851 given three years after the death or divorce of her husband to bring her action for the recovery of real property there specified. To the same effect are Batte v. McCaa, 44 Ark. 398, 400, and Garland Co. v. Gaines, 47 Ark. 558, 562, 2 S. W. Rep. 460.

The complainant avers that she first discovered the conveyances to, and claim of, Cockrill in 1858, after her marriage; that her husband died in 1888; and, as she brought this suit within three years after his death, her counsel argues, with great learning and ability, that she was saved by her coverture from the bar of the statute. The difficulty in sustaining this contention is that the bill does not state a cause of action for the recovery of real estate, within the meaning of the act of 1851, and hence the rights of the complainant here cannot be measured by that act. It is true that in the prayer of the bill a decree that the complainant is entitled to one fifth of every part of the land of which William Armstrong died

seised is asked, but the case made by the bill warrants no such relief. By the first clause of the will the legal title and the power of disposition of all the property of William Armstrong were vested in the three brothers. No title, no right to the possession, no right of action for the recovery of any of the property, was vested in the complainant. The title, possession, and power of disposition were given to the three brothers, with full discretion to manage and sell any part of the property, as their judgment dictated, after the youngest of the three attained his majority, and to make the provision for the daughters either out of the property itself or out of its proceeds, as they saw fit; and the complainant never could have recovered any part of it from her brothers, or have enjoined or prevented their sale or disposition of any of it, so long as they acted with reasonable discretion and in good faith towards her, with intent to fairly carry out the trust declared in the will. The third clause of the will, which reads: "Third. Having full confidence in my sons aforesaid, and in their disposition to deal justly and liberally, I leave it to them to make proper and suitable provision for their sisters, Susan, Margaret, and Nancy,"—surely gave the complainant no greater right or higher interest in either the real or personal property of the estate than a clause devising to her a legacy of a specific amount equal in value to a suitable provision for her would have given, and she could maintain no action to recover any of the real estate under either devise. The only action she could maintain against the trustees or devisees to recover a suitable provision in the one case, or to recover the specific legacy in the other, would rest upon the implied contract or liability, not in writing, which the brothers assumed by their acceptance of the devise of the property to them under a will which charged it with the suitable provision in the one case or the legacy in the other. The implied liability thus created was, indeed, secured by the trust or equitable lien upon the property created by the third clause of the will; but the action to enforce the personal liability would be governed and limited by the act of March 5, 1838, (section 4478, Mansf. Dig.,) and the action to enforce the trust or foreclose the equitable lien, which is merely an incident to the personal liability, must be governed by the same statute.

This suit against the late defendant Cockrill (and we speak of him alone in this discussion, because, if this suit could not be maintained against him, it certainly cannot be against any of the other defendants) is not different in its foundation or character from the suit that the complainant might have brought against her brothers to enforce the lien and trust of which we have just spoken. It can be maintained, if at all, because the bill alleges, in effect, that in negotiating the sale and conveyance to himself, and in the partition with David I. Armstrong, he colluded with the three brothers to violate the trust in complainant's favor, with full knowledge that they had been and then were violating, and that they intended to continue to violate, it to such an extent that the complainant would never receive the suitable provision given by the will, or any of the proceeds of the sale of the property to himself. This knowledge that these conveyances were made for an unlawful purpose, and this collusion with

the trustees to effect that purpose, charged the title which Cockrill obtained with the same burden in complainant's favor which rested upon it in the hands of the original trustees. He took the title at his peril, and by his acceptance of it, with the knowledge and collusion charged upon him by this bill, the property in his hands stood charged with the liability and clothed with the trust to make the suitable provision for the defendant originally charged upon the estate by the third clause of the will. Oliver v. Piatt, 3 How. 333, 401; 1 Perry, Trusts, § 217. He took the title cum onere; but no heavier burden, no greater liability, rested upon the lands in his hands than when in the hands of his grantors. By making the suitable provision for the complainant named in the will, he could at any time discharge all these lands of the trust. She still had no title to any of the real estate. She could maintain no action for its recovery. The only cause of action stated in this bill rests upon the implied liability, not in writing, to make suitable provision for this complainant, with which the land stood charged by virtue of the acceptance by Cockrill of the title to this property with full knowledge of the trust, and its attempted violation by the conveyances to him. This action is therefore governed and limited by the act of March 5, 1838, (section 4478, Mansf. Dig.,) and not by the act of January 4, 1851, (section 4471, Mansf. Dig.)

Upon this question we are relieved of all embarrassment by the decisions of the supreme court of Arkansas. In Millington v. Hill, 47 Ark. 301, 314, 1 S. W. Rep. 547, the provision of the will was:

"I give to my son Seth W. Bolton my entire estate, both real and personal, in Desha county, Arkansas, by his paying to my estate or other heirs the fifteen thousand dollars I have paid for the places."

And upon this subject that court said:

"Seth Bolton accepted the devise, and in doing so he, by implication, agreed to pay the sum given to the other heirs. Williams v. Nichol, (Ark.) 1 S. W. Rep. 244, 250. While the will makes it incumbent upon him to pay the legacy, it does not devolve upon him such duties and obligations as create a direct trust, and prevent the statute of limitations from running in his favor. His agreement to pay is an implied contract, and not in writing, and is therefore within the letter of the three-years statute. Etter v. Greenawalt, 98 Pa. St. 422. But the $15,000 also became a charge, under the will, upon the land itself, and it is this equitable lien the appellant seeks to enforce. The question is, what statute applies? We cannot adopt the analogy that governs suits on mortgages, because a mortgage is the conveyance of the legal estate, and gives the mortgagee his action for the possession of the mortgaged premises, while the equitable charge created by the will gives no right of possession. It is more nearly allied to the mortgage in those states where the latter is recognized as a security only, and as conveying no title. But, as the testator evidently intended that Seth Bolton should take the estate only upon paying so much of a consideration for it, we may infer from this that the payment of the legacy was in part, at least, the consideration of the devise, and from this we derive a strong support for the analogy of the vendor's equitable lien for the unpaid purchase money. Now, in those jurisdictions where the mortgage conveys no title, the lien is regarded as an incident to the debt, merely, and is barred when the debt can no longer be enforced, and the same rule is applied by this court to the equitable vendor's lien. Stephens v. Shannon, 43 Ark. 464; Waddell v. Carlock, 41 Ark. 523. And this rule is held to govern the equitable charge of a legacy in the only case in point that has come to our notice. Yearly v. Long, 40 Ohio St. 27. There it is held, the personal remedy against the devisee being barred, the lien is discharged."

To the same effect is Dismukes v. Halpern, 47 Ark. 317, 320, 1 S. W. Rep. 554.

It follows that the complainant would have been barred from a recovery upon the cause of action set forth in this bill three years after she discovered the conveyance to, and claim of, Cockrill, if the act of December 14, 1844, (section 4489, Mansf. Dig.,) had not extended her time to sue. That act provided that, if any person entitled to bring any action in that or any act of limitations then in force should at the time of the accrual of the cause of action be a married woman, she might bring her action within the time then specified by law for bringing such actions after such disability was removed. The act of April 28, 1873, (section 4625, Mansf. Dig.,) in express terms, removed the disability of every married woman to sue, and expressly authorized her to sue alone on account of her sole and separate property. By this act the disability of the complainant was removed on April 28, 1873, and three years later she was barred by these statutes from maintaining any action on the cause set forth in this bill in any of the courts of Arkansas. McGaughey v. Brown, 46 Ark. 25; Garland Co. v. Gaines, 47 Ark. 562, 2 S. W. Rep. 460.

In McGaughey v. Brown, supra, one McGaughey was administrator of Brown's estate. Under orders of the probate court he sold lands of the estate to his wife, through an agent of his, and paid the purchase price out of the moneys of the estate in the year 1868. In 1879 a Mrs. Price, who was one of the heirs of Brown, and who seems to have been a married woman from 1867 until that time, brought suit against the heirs of Mrs. McGaughey, who had died meanwhile, to set aside the sale, and recover her share of the lands. The supreme court of Arkansas held in that case, at page 37 of the Report, that section 4474 of Mansfield's Digest, which provides that all actions against the purchaser, his heirs, or assigns, for the recovery of lands sold at judicial sales, shall be brought within five years of the date of such sale, was a bar to her suit, and that the fact that she was a married woman would not relieve her from the bar of that statute, because there was no exception in favor of married women therein, apparently overlooking for the moment the act of 1844, (section 4489, Mansf. Dig.) However, in Garland Co. v. Gaines, 47 Ark., at page 562, 2 S. W. Rep. 460, that court held that Mrs. Price was entitled to the benefit of the exemption created by the act of 1844, but that she was barred from maintaining her suit because her disability was removed by the married women's act of 1873, and more than five years had elapsed between the date of that act and the commencement of her suit. The words of the court were:

"This is the true ground of decision in McGaughey v. Brown, 46 Ark. 25. Mrs. Price, the married woman in that case, was barred of her suit, not only because the five-years statute applicable to judicial sales contained no exemption in favor of married women, for the general saving clause in the subsequent act of 1844 would have protected her, but because the legislature had removed her disability more than five years before she exhibited her bill."

Here, then, is an adjudication of the highest judicial tribunal of Arkansas that the effect of the act of 1873 was to remove the disability of a married woman created by the act of 1844 to sue constructive trustees for her distributive share of an estate, and that time

commences to run against her from the date of that act, and it is decisive of this case in this court.

In arriving at this conclusion it has not escaped our attention that it has been held in Arkansas that the vested interest of a husband in the real estate of his wife acquired prior to April 28, 1873, and then existing, could not be divested by the act of that date, since by the marriage the husband acquired a vested freehold interest in her lands, and became entitled to their rents and profits. Criscoe v. Hambrick, 47 Ark. 238, 1 S. W. Rep. 150; Shryock v. Cannon, 39 Ark. 435. Upon these decisions counsel for complainant bases the contention that her husband had a vested right in the property of his wife here in question; that it was not, therefore, "her sole and separate property;" that the act of 1873 removed the disability of a married woman to sue on account of her sole and separate property only; and that it, therefore, can have no application to this case. This position is untenable. The right of the complainant to enforce against the constructive trustees her equitable lien on the property for the suitable provision was a mere chose in action against one holding adversely. Bish. Mar. Wom. § 73. It has indeed been held in New York that the husband, by the marriage, acquires a vested right in the choses in action of his wife, and that this right cannot be arrested or divested by an act of the legislature after marriage, even though he has taken no steps to reduce them to possession. Westervelt v. Gregg, 12 N. Y. 202, 206.

But the generally accepted doctrine in this country,—that which is established by the current of American authorities, and that which has long prevailed in the state of Arkansas,—is that in the absence of statutory regulations the husband acquires no vested right in his wife's choses in action by marriage, and hence that a statute may, before he reduces them to possession, forbid his doing so, declare them to be the sole property of the wife, and give her the right to sue for and recover them, without a violation of any of the guaranties of the constitution. Price v. Sessions, 3 How. 624, 633; McGaughey v. Brown, supra; Garland Co. v. Gaines, supra; Carter v. Cantrell, 16 Ark. 154, 159; Sorrels v. Trantham, 48 Ark. 386, 395, 3 S. W. Rep. 198, and 4 S. W. Rep. 281; Goodyear v. Rumbaugh, 13 Pa. St. 480; Mellinger's Adm'r v. Bausman's Trustee, 45 Pa. St. 522, 529; Gallego v. Chevallie, 2 Brock. 286; Henry v. Dilley, 25 N. J. Law, 302; Clarke v. McCreary, 12 Smedes & M. 347; 2 Bish. Mar. Wom. § 45.

Chief Justice Marshall, in Gallego v. Chevallie, supra, said:

"The common law of England identifies the wife so entirely with her husband as scarcely to tolerate the idea of her separate existence while they live together. She cannot acquire personal property by a direct conveyance to herself. Her interest is, by act of law, almost in every instance, transferred to her husband, and becomes vested in him. But this rule does not apply to personal estate to which a female is entitled before marriage, and which has not been reduced to possession. This remains her property, and does not vest in the husband by the marriage. The marital right does not extend to the property while a chose in action, but enables the husband to reduce it to possession, and thereby to acquire it. The property becomes his, not upon the marriage, but upon the fact of his obtaining possession."

The complainant's husband, therefore, by his marriage, acquired the mere right to maintain an action for, and to reduce to posses-

sion, this chose in action of his wife. If he had reduced it to possession in his lifetime, it would have become his property, but he never did reduce it to possession, and it has always been, and still remains, her property.

Not only this, but the husband's right of action to recover this property accrued as early as 1858, when, according to the bill, he visited Arkansas with his wife, and found Cockrill in possession of the property, claiming to own it under the deeds to him from the three brothers, and this right of action became barred by the act of March 5, 1838, (section 4478, Mansf. Dig.,) three years thereafter, for he certainly labored under no disability. Carter v. Cantrell, 16 Ark. 154, 159; Kibbe v. Ditto, 93 U. S. 674, 679; Castner v. Walrod, 83 Ill. 171, 180, 181. What right this husband had in this property after the only right he ever acquired in it—the right to sue for and reduce it to possession—was thus barred by the statute of limitations, it is difficult to see. It was complainant's sole and separate property before the marriage. The marriage gave her husband nothing more than the right to reduce it to possession. He lost that right by his inaction as early as 1861, and from that time forward it was, to all intents and purposes, her sole and separate property, since she alone owned it, she alone could sue for and recover it, and upon her death, her husband surviving, it would have descended to her next of kin, (Sorrels v. Trantham, 48 Ark. 395, 3 S. W. Rep. 198, and 4 S. W. Rep. 281,) and upon his death, while she survives, it remains her property. The act of 1873, therefore, fairly applied to it, and clearly removed the complainant's disability, so that the three years commenced to run against her at its date. In 1876, then, the complainant was barred by the statute of limitations of Arkansas from maintaining any action in any of the courts of that state upon the cause set forth in this bill. That a federal court, sitting in equity, ought not to permit such a suit to be maintained 15 years after it was barred by the statutes of the state in which it was brought, where, as in this case, all the witnesses but complainant, who were familiar with the transactions complained of, are dead; where the condition and value of the property has become strikingly changed; and where the complainant shows no excuse whatever for the laches of which she has been guilty during the 18 years that elapsed after her disability was removed, before she brought this suit,—is too well settled in this court to warrant more than a reference to the authorities. Naddo v. Bardon, 51 Fed. Rep. 493, 2 C. C. A. 335; Lemoine v. Dunklin Co., 51 Fed. Rep. 487, 2 C. C. A. 343; Rugan v. Sabin, (decided in this court December 6, 1892,) 53 Fed. Rep. 415.

The conclusion we have reached renders it unnecessary to consider or decide any other questions raised by the demurrer. The result is that a suit brought in Arkansas, by a legatee, against the collusive purchaser from the executors and devisees, under a will which charged the property purchased with the payment of the legacy, to enforce the trust thereby created, is not an action for the recovery of real property, and is not limited by the act of the legislature of Arkansas of January 4, 1851, (section 4471, Mansf. Dig.) It is an action founded on an implied contract or liability, not in writing, and is

limited by the act of March 5, 1838, (section 4478, Mansf. Dig.) Where such a right of action to enforce a trust charging the property purchased with the duty of making "suitable provisions" for a female accrued to a married woman more than three years prior to April 28, 1873, and the husband had taken no steps to recover it, so that his right to so do was barred by the statute, the married women's act of that date (section 4625, Mansf. Dig.) removed her disability to sue, and her cause of action was barred three years thereafter. A federal court, sitting in equity, which acts or refuses to act in analogy to the statute of limitations, ought not to be moved to enforce a constructive trust, or to foreclose an equitable lien, where the complainant has, without excuse, remained silent and supine for a much longer period after discovery of the substantial facts constituting her cause of action than the time limited by the statutes of the state in which the action is brought for the commencement of actions for such relief. The decree below is affirmed with costs.