## SWIFT v. SMITH et al.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

### No. 826.

**1. LACHES—VOID ADMINISTRATOR'S SALE.**

A delay of 20 years by a daughter after her majority to assert any claim as heir to certain city lots, for which her father held certificates from a town-site company, and which were conveyed to his administrator after his death, was laches, as against persons claiming under mesne conveyances from purchasers at a void administrator's sale; there being no fraud, and she having knowledge of facts sufficient to put her on inquiry leading to a knowledge of all the facts which were spread upon the records of the probate court and the register of deeds, and the lots having, by the growth of the city and by improvements, increased in value from $250 to $25,000.

**2. SAME—NOTICE.**

The facts that plaintiff knew, when she became of age, who was the administrator of her father's estate, and was acquainted with him; that she had lived for several years in the house with her grandfather, who had been her guardian, and had received $1,000 from this administrator for her benefit; that she knew that her father had lived and died in the county in which her father's estate was administered, and that he owned some property in that state,—were sufficient to charge plaintiff with notice of all the facts, as whatever is notice enough to call for inquiry is notice of everything to which such inquiry would have led.

**3. SAME—TRUSTS.**

The rule that neither time nor laches will bar the right to enforce an express trust is subject to the exception that when the trust is repudiated, and knowledge of the repudiation is brought home to the cestui que trust, the case is brought within the ordinary rules of limitation and laches.

**4. LIMITATION OF ACTIONS—FRAUD.**

The Colorado statute (Mills' Ann. St. 1891, § 2911) providing that bills for relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting the fraud bars such a suit after three years from knowledge of facts which would put a person of ordinary prudence upon an inquiry, which, if pursued with reasonable diligence, would lead to a discovery of the fraud.

Appeal from the Circuit Court of the United States for the District of Colorado.

This was an appeal from a decree dismissing a bill brought to declare and enforce a trust in the title to certain lots in the city of Denver, in the state of Colorado. The statement is contained in the opinion.

G. M. Lamberton (F. M. Hall with him on the brief), for appellant.

James H. Blood (Gustave C. Bartels, Charles S. Thomas, and Victor A. Elliott with him on the brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge. The decision of this court in Wetzel v. Transfer Co., 27 U. S. App. 594, 12 C. C. A. 490, and 65 Fed. 23, is fatal to the bill of the appellant in this case. In that case a land warrant had been issued on September 30, 1848, to Elizabeth Remsen, widow of George W. Remsen, and to Harriet A., Mary Ann, John W., Elizabeth, and George W. A. Remsen, children and heirs at law of said George W. Remsen, deceased, under the provisions of section 9 of the act of congress approved on February 11, 1847 (9 Stat. 123, 125, c. 8). Section 9 of that act provided in substance that, in the event of the issue of a land warrant under it to the minor children of a deceased soldier, "then the legally constituted guardian of such minor children shall, in conjunction with such of the children, if any, as may be of full age, upon being duly authorized by the orphans' or other court having probate jurisdiction, have power to sell and dispose of such certificate or warrant for the benefit of those interested." On October 6, 1848, Elizabeth Remsen qualified as guardian of all the children of her deceased husband, except Harriet A. who was the oldest of them, and was about 17 years of age. On October 11, 1848, Elizabeth Remsen, the mother, without any order or authority from the orphans' court, executed an assignment of this land warrant to Nathan C. D. Taylor, in her own right, "and as guardian of the persons and estates of Mary Ann Remsen, John Wesley Remsen, Elizabeth Remsen, and George W. A. Remsen, minor children of George W. Remsen, deceased." The oldest daughter, Harriet A., joined in this assignment to Taylor, who located the warrant on a tract of land, which is now situated between the cities of St. Paul and Minneapolis, and on March 20, 1850, this land was patented to him as assignee of Elizabeth Remsen, in her own right, and as guardian of the minor heirs of George W. Remsen, deceased. On May 28, 1892, John W. Remsen, who was in 1848 one of these minor heirs, and other parties who were the heirs of the other minor heirs, who were then dead, brought their bill in equity in the United States circuit court for the district of Minnesota against the parties who, by mesne conveyances, had succeeded to the title conveyed to Taylor by his patent, and prayed that the title of the minor heirs to their undivided interest in the land might be established, that the defendants might be adjudged to hold the legal title to that interest in trust for the complainants, and that they might be compelled to convey it to them. The complainants alleged and proved that none of them, except Harriet A., who joined in the assignment, knew of the issue of the land warrant to them, or of its location upon the land in question, until 1889. This court held that, "while it is true that ignorance of one's rights will frequently serve as an excuse in a court of equity for not bringing a suit to enforce them, yet it will never have that effect where such ignorance is fairly attributable to negligence, or to a party's failure to make such inquiries with respect to his rights as, with the information at his command, he ought to have made," and dismissed the bill on account of the laches of the complainants.

In the case at bar, the appellant, Elfleda C. Swift, the sole heir at law of J. H. Russell, who died in Pueblo county, in the state of Colorado, in 1863, brought her bill in the court below against the appellees, Joseph H. Smith and wife, Charles B. Kountze, and Mitchell Harrison, on September 13, 1893, and prayed that they might be adjudged to hold the legal title to two lots in the city of Denver, in the state of Colorado, which they had acquired through mesne conveyances from the administrator of the estate of Russell, in trust for her, and that they might be compelled to convey them to her. These facts were established at the final hearing: At the time of Russell's death, he owned a ranch and some cattle in Pueblo county, and a certificate from the Denver Town-Site Company that he was entitled to the two lots in controversy. On September 12, 1863, John A. Nye was appointed administrator of the estate of Russell by the probate court of Pueblo county, where he had lived. On August 11, 1865, James Hall, the probate judge of Arapahoe county, in the state of Colorado, conveyed these lots to John A. Nye, administrator of James H. Russell, deceased, upon an application which he had made therefor as administrator of the estate of Russell. This application was based upon the certificate of the town-site company. On July 1, 1868, the land which included these lots was patented to Judge Hall, upon an entry made by him on May 6, 1865, under the act of congress approved May 28, 1864 (13 Stat. 94). On July 4, 1864, the probate court of Pueblo county made a decree that Nye, as administrator, might sell all the real and personal property of the estate of Russell at public or private sale, but there was no record of any proper petition for such a sale, or of any notice of any hearing upon such a petition in that court, except a recital in the decree. On August 8, 1863, there was filed in the probate court of Pueblo county an inventory and appraisement of the property of Russell's estate, which described the certificate of right to the lots in question which had been left by Russell. On January 3, 1866, John A. Nye, as administrator, filed his account in that court, in which he charged himself with $25 cash received on account of these lots, and credited himself with the note of John A. Nye & Co. for $1,000. The appellant was born in 1853. From 1857 until 1867 she lived in Plainfield, N. J., and from that time, until this suit was commenced, she lived in Nebraska City, Neb. She knew John A. Nye, the administrator of her father's estate, before she went to Nebraska. She had heard that her father owned some property in Colorado, but she first learned that he owned the two lots in question from her husband, who looked them up in the records at Denver in 1891 of his own accord. She knew that her father lived and died in Pueblo county, Colo. There is no evidence in the record that she ever made any inquiry about the property of her father, or that she ever learned any other facts about it prior to 1891. On September 5, 1863, Warren Green, of Plainfield, N. J., the grandfather of the appellant, was appointed the guardian of her person and estate by the orphans' court of Union county, N. J. On July 4, 1864, as such guardian, he filed a petition in the probate court of Pueblo county, Colo., for the sale of the interest of the estate of Russell in Arkansas Valley Ditch. Among the files of the court of Pueblo coun-

ty was a letter of this guardian dated August 24, 1866, directed to the judge of that court, in which he wrote that he had received the note for $1,000, with which Nye charged himself in his account as administrator; that $100 had been paid upon it; that he was satisfied with the statement of the estate of Russell made to him by Nye, as administrator; and that the latter's bondsmen might be discharged. In the summer of 1867, Nye, the administrator, sold and conveyed the two lots in question to Abner R. Brown for $250; and Brown fenced them, built a house on one of them, lived in it, and occupied the lots for some years. Prior to that summer, these lots had been unoccupied and unimproved; but from that time until the commencement of this suit they were occupied, and the taxes upon them were paid by Brown and those who claimed under him. Brown lost his deed, and on March 25, 1869, Nye, as administrator of the estate of Russell, executed and delivered to him an administrator's deed of the lots in regular form, which was shortly after recorded in the office of the register of deeds in Denver. On July 25, 1867, Nye made a warranty deed of these lots to his brother, and whatever rights that deed vested in its grantee were subsequently conveyed to Brown in the year 1876. The title of Brown passed through eight mesne conveyances to the appellee Smith, who paid $25,000 for it in 1889, and in 1891 gave a trust deed upon it to the appellee Kountze to secure a debt of $13,000 owing to the appellee Harrison. All these conveyances were recorded about the time they were respectively made, except the first deed to Brown, which was lost. Meanwhile a brick house had been erected on one of the lots by one of the holders of this title, and the growth of the city of Denver, and the improvements upon the lots, made by these purchasers, enhanced their value from $250, in 1867, to $25,000, at the time of the commencement of the suit. Then it was that the appellant filed this bill to subject the legal title held by the appellees to the trust in her favor as the heir of Russell. She comes too late. Her case cannot be distinguished in principle from that of Wetzel v. Transfer Co., supra, and that of Percy v. Cockrill's Ex'r, 10 U. S. App. 574, 589, 4 C. C. A. 73, 81, and 53 Fed. 872, 875.

Conceding, but not deciding, that the records of the deeds to and from Nye, the administrator, were notice to all parties claiming under him that he originally held the title in trust for the appellant, and that the decree of sale of the probate court was void, the appellant presents no case here which entitles her to relief in equity against a purchaser who paid $25,000 for the title to this land more than 20 years after these deeds were recorded, on the faith of the conveyances of the administrator and the appellant's silent abandonment of the property. Nothing but conscience, good faith, and reasonable diligence can call a court of equity into action. "The strongest equity may be forfeited by laches or abandoned by acquiescence." Peebles v. Reading, 8 Serg. & R. 493; Great West Min. Co. v. Woodmas of Alston Min. Co., 14 Colo. 90, 95, 23 Pac. 908; Sullivan v. Railroad Co., 94 U. S. 806, 811.

Counsel for the appellant invoke the principle that there can be no acquiescence and no laches where there is no knowledge, and contend that, since the appellant did not know that she had any interest in

these lots until 1891, she cannot be charged with laches in asserting her rights. But ignorance which is the effect of inexcusable negligence is no excuse for laches, and knowledge of facts and circumstances which would put a person of ordinary prudence and diligence on inquiry is, in the eyes of the law, equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose. "Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient knowledge to lead him to a fact, he shall be deemed conversant with it." Kennedy v. Green, 3 Mylne & K. 699, 722; Wood v. Carpenter, 101 U. S. 135, 141; Rugan v. Sabin, 10 U. S. App. 519, 532, 533, 3 C. C. A. 578, 581, and 53 Fed. 415, 418, 419; Scheftel v. Hays, 19 U. S. App. 220, 227, 7 C. C. A. 308, 313, and 58 Fed. 457, 461. This principle measures the knowledge which the law imputes to those who are charged with laches. Wetzel v. Transfer Co., 27 U. S. App. 594, at page 603, 12 C. C. A. 490, and 65 Fed. 23; Percy v. Cockrill's Ex'r, 10 U. S. App. 574, 589, 4 C. C. A. 73, 81, and 53 Fed. 872, 875; Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 436, 451, 13 Sup. Ct. 944; Felix v. Patrick, 145 U. S. 317, 330, 331, 12 Sup. Ct. 862; Johnston v. Mining Co., 148 U. S. 360, 370, 13 Sup. Ct. 585.

When the appellant became of age, in 1871, she had met and was acquainted with John A. Nye, who had been the administrator of her father's estate. She had lived for 10 years (from the age of 4 to the age of 14 years) in the same town, and for 4 years in the same house, with her grandfather, who had been her guardian, and had received $1,000 from this administrator for her benefit. She knew that her father had lived and died in Pueblo county, in the state of Colorado; that he owned some property in that state; and that Nye had been the administrator of his estate. If these facts were not sufficient to excite attention and call for inquiry as to the property of this estate left unsold or improperly sold by the administrator, we are at a loss to know what facts would have been sufficient. The least investigation in the natural and usual place to make such an inquiry would have led unerringly to a discovery, in 1871, of all the facts which the husband of the appellant learned of his own accord, and brought to her attention in 1891, without any inquiry on her part. She was not the victim of any actual fraud or of any concealment. All the facts on which she now relies for relief were spread upon the records of the probate court of Pueblo county, and upon the records of the register of deeds at Denver, in 1871, open and ready for her inspection. The natural place to inquire after property of the estate of Russell, when she knew that he had lived and died in Pueblo county, in the state of Colorado, was in the probate court of that county. An inquiry there would have disclosed a sufficient description of these lots and their location, both in the inventory of her father's estate and in the account of the administrator, to have led to a discovery of their occupation by Brown, and of the record of the deeds of them in the register's office at Denver. Under the principle of law to which we have referred, the appellant must be charged with the knowledge, in 1871,

of all the facts on which this suit is founded, because she then knew facts sufficient to put a person of ordinary prudence and sagacity upon an inquiry which would have led inevitably to a knowledge of those facts, if it had been pursued with reasonable diligence. Moreover, if the records of deeds to and from the administrator were constructive notice to all who purchased the title under them that Nye originally held this title in trust for the appellant, it is difficult to perceive why those records and the records of the deeds which followed them were not constructive notice to the appellant of all the facts which they disclosed.

Another contention of counsel for the appellant is that the record of the deed of the judge of the probate court of Arapahoe county to Nye, the administrator, disclosed an express trust in favor of the appellant; and they cite the principle that neither time nor laches will bar the right to enforce such a trust, because the possession and use of the trust property by the trustee is presumed to be the possession and use of the cestui que trust, and never adverse to him. Speidel v. Henrici, 120 U. S. 377, 386, 7 Sup. Ct. 610; Lemoine v. Dunklin Co., 38 Fed. 567. The principle is sound, but it is subject to the express exception that when the trust is repudiated, and knowledge of the repudiation is brought home to the cestui que trust, the case is brought within the ordinary rules of limitation and laches. The purchase of these lots from Nye, as administrator, in 1867, the payment to him by Brown of their full value, Brown's occupation of them as his residence, his improvement of them, the administrator's deed to him in 1869, the subsequent sales and conveyances of them, the payment of taxes upon them, and their improvement by the purchasers, were all acts of repudiation of this trust, acts utterly inconsistent with any admission of its existence. The appellant was chargeable, under the law, as soon as she became of age, in 1871, with knowledge of all these acts which had been done prior to that date; and, upon the same principle, she was chargeable with knowledge of the later acts as they occurred. This case therefore falls under the exception to the rule, and the inexcusable negligence and delay of the appellant are fatal to her recovery. Naddo v. Bardon, 4 U. S. App. 642, 682, 2 C. C. A. 335, 338, and 51 Fed. 493, 495, and cases last cited supra. Any other conclusion in this case would be unconscionable and inequitable. The court in which the appellant exhibited her bill is a court of conscience, bound by its principles and inspired by its history to prevent, but never to perpetrate, injustice and wrong. The purchasers under the administrator of the estate of the appellant's father improved this property, and held undisputed possession of it for more than 20 years after the appellant became of age. They built houses upon it. They discharged the burdens imposed upon it for its protection and for the support of civil government. Under their improvement and care, the lots advanced in value from about $1,000, in 1871, to $25,000, in 1889. Meanwhile the appellant paid no taxes and made no inquiry about her interest in the property, although all the facts lay spread upon the public records of Pueblo county, in the state of Colorado, where she knew her father lived and died seised of some property. Neither con-

science nor reasonable diligence called upon the court below to come to her aid, and its decree dismissing her bill was right, both upon principle and authority.

The conclusion we have reached upon equitable principles is in accord with the statutes of limitation in the state of Colorado. Those statutes provide: (1) That no person shall commence an action for the recovery of lands unless within 20 years after the right first accrued, and that, where the land is claimed by an heir or devisee, his rights shall be deemed to have accrued on the death of his ancestor (Sess. Laws Colo. 1893, pp. 327–330, §§ 1, 3); and (2) that bills for relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting the fraud, and not afterwards (Mills' Ann. St. Colo. 1891, § 2911). It is plain that section 1, supra, would have barred the appellant from maintaining an action for the recovery of these lots when she commenced this suit, becuse it was then 30 years after her right had accrued, and 22 years after she became of age.

Counsel for the appellant contend, however, that the execution and delivery of the administrator's deed to Brown was in law a fraud upon the appellant, because it was a breach of duty by a trustee; and from this they argue that this suit is governed by section 2911, and is not barred, because the appellant did not discover this fraud until within 3 years before the commencement of the suit. But if the execution of the administrator's deed and the repudiation of the trust thereby were "facts constituting a fraud," within the meaning of this section, the appellant was, as we have shown, chargeable with knowledge of these facts in 1871, 22 years before she commenced this suit, and her cause of action was therefore barred by this section. The provisions of this statute bar a suit, not only after 3 years from actual knowledge of facts constituting the fraud, but also after 3 years from knowledge of facts which would put a person of ordinary prudence upon an inquiry, which, if pursued with reasonable diligence, would lead to a discovery of the facts constituting the fraud. Pipe v. Smith, 5 Colo. 146, 159; Rugan v. Sabin, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, and 53 Fed. 415, 420; Burke v. Smith, 16 Wall. 390, 401; Parker v. Kuhn, 21 Neb. 413, 421, 426, 32 N. W. 74; Wright v. Davis, 28 Neb. 479, 483, 44 N. W. 490.

The decree below must be affirmed, with costs; and it is so ordered.