JEWELL et al. v. TRILBY MINES CO. et al.

SAME v. MOOSE GOLD MINING CO.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1915.)

Nos. 4470, 4471.

1. QUIETING TITLE ⬅➡45—PLEADING—DEFENSES.

Rev. St. Colo. 1908, § 4089, provides that every person in actual possession of lands under claim and color of title made in good faith, and who shall for seven successive years pay all taxes legally assessed, shall be adjudged to be the legal owner of such lands according to the purport of his paper title. Held that, in a suit to quiet title, defendants' claim of title under this section was an affirmative defense, which it was the duty of defendants to set up and establish, and which would not justify a dismissal upon motion.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 93; Dec. Dig. ⬅➡45.]

2. TRUSTS ⬅➡372—ESTABLISHMENT—ACTIONS—LACHES.

Ordinarily courts of equity, acting on their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere in attempts to establish stale trusts, except where the trust is clearly established and the facts have been fraudulently and successfully concealed by the trustee from the knowledge of the cestui que trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 600–603; Dec. Dig. ⬅➡372.]

3. QUIETING TITLE ⬅➡29—LACHES—GUARDIAN'S AND ADMINISTRATOR'S SALE OF MINING PROPERTY.

Plaintiffs' father died in 1892, while plaintiffs were minors, and in October of that year an administrator appointed by a Missouri probate court was authorized to sell their father's interest in a mining claim in Colorado. In 1894 a guardian of plaintiffs and a curator of the estate of their deceased father, appointed by the same court, was authorized to sell the father's interest in another mining claim, also situated in Colorado. The sales were made for what might well have been considered a fair price at that time, and the properties were developed with the expense, exertion, and risk incidental to mining enterprises. In 1913, 15 years after the oldest plaintiff, and 8 years after the youngest plaintiff, reached her majority, a bill was filed to quiet title and for an accounting, on the theory that the Missouri probate court had no jurisdiction to authorize the sales. Though fraud was alleged, no facts supporting the charge of fraud were alleged, except the want of authority of the administrator and the guardian to make the sales, and the assertion of title and the enjoyment of the properties by the purchasers. It appeared that plaintiffs knew of the appointment of the administrator and the guardian, and while they claimed that they had no knowledge of their rights until in 1913, all that transpired in connection with the estate was disclosed by the public records. Held, that the suit was barred by laches, since ignorance which is the effect of inexcusable negligence is no excuse for laches, and knowledge of facts and circumstances which would put a person of ordinary prudence and diligence on inquiry is, in law, equivalent to a knowledge of the facts which a reasonably diligent inquiry would disclose.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 63; Dec. Dig. ⬅➡29.]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suits by Nellie A. Brene Jewell and others against the Trilby Mines Company and another and against the Moose Gold Mining Company. From a decree dismissing the bills, plaintiffs appeal. Affirmed.

Charles Roach, of Denver, Colo. (William L. Pierce, of Belvidere, Ill., and H. A. Hicks, of Denver, Colo., on the brief), for appellants.

F. A. Williams, of Denver, Colo. (G. W. Whitford, of Denver, Colo., on the brief), for appellees Trilby Mines Co. and George Diehl.

William Story, Jr., of Salt Lake City, Utah (William Story and Frederick Steigmeyer, both of Salt Lake City, Utah, on the brief), for appellee Moose Gold Mining Co.

Before CARLAND, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

VAN VALKENBURGH, District Judge. October 18, 1913, in cause No. 4470, appellants brought against all the above-named appellees a bill of complaint, entitled "a bill to quiet title and for accounting," whereby they sought to establish their right and title to an undivided one-half interest in and to a certain piece of mining property known and described as the Ben Harrison lode and mining claim, and to an undivided one-third interest in and to a certain piece of mining property known and described as the Moose lode and mining claim. January 20, 1914, a hearing was had on motions of appellants Diehl and the Moose Gold Mining Company to dismiss the bill on the ground of misjoinder. The result of this hearing was that No. 4470 proceeded upon an amended bill to determine the rights of complainants to the Ben Harrison lode and mining claim, and on April 15, 1914, a bill of complaint was filed in cause No. 4471 against the Moose Gold Mining Company to determine the rights of complainants in and to the Moose lode. The bills, in effect, seek to enforce a trust in the defendants for the benefit of complainants to the extent of the interests claimed in the bills. The two cases were heard together on appeal, and inasmuch as the controlling principles, as we view them, apply with equal force to both, they will be considered and disposed of in one opinion.

In cause No. 4470 the facts upon which the cause of action is based are these: July 18, 1891, the Ben Harrison lode was located by one G. A. Sheek and Gus P. Brene. January 11, 1892, Gus P. Brene died intestate in Phelps county, Mo., leaving as his heirs the four minor children, who are now complainants in this cause. March 2, 1894, the probate court of Phelps county, Mo., appointed one Victor Brene as guardian of the persons and curator of the estate of their deceased father. On the same day this guardian filed in said court his petition to sell one-half of the Ben Harrison lode, and an order of sale was entered by the court. April 2, 1894, the guardian executed a deed for one-half of said property to one Clarence Edsall; the consideration named being $4,000. Later in the year a receiver's certificate and patent were issued. December 1, 1904, Edsall conveyed the Ben Harrison claim to the Moose Gold Mining Company. December 7, 1908, the latter company conveyed to the Trilby Mines

Company, which immediately entered into and ever since has been in exclusive possession of the Ben Harrison lode. November 10, 1908, the Trilby Mines Company executed upon said property a mortgage to the Colorado Title & Trust Company, as trustee, to secure an indebtedness of $90,000. August 2, 1913, the property was conveyed under mortgage sale to the defendant George Diehl. In October following this suit was commenced.

In cause No. 4471, the following additional facts should be stated: July 22, 1891, the said Gus P. Brene, together with one G. A. Sheek and one William J. Banta, discovered and located the Moose lode and mining claim hereinabove referred to, and after the death of Brene, to wit, on or about the 11th day of February, 1892, the said Victor Brene was appointed administrator of the estate of Gus P. Brene, deceased, by the probate court of Phelps county, Mo. On or about October 22, 1892, said probate court, upon application entered an order in the matter of the administration of said estate, authorizing the administrator to convey the interest of Gus P. Brene, deceased, in said Moose lode and mining claim. October 22, 1892, the administrator, together with W. J. Banta and G. A. Sheek as grantors, acknowledged and delivered to John E. Smith, John B. Glasser, and Ward Hunt a deed to the last-named property. The deed purports on its face to have been executed by Brene, as such administrator, under the authority of the order of sale made by the probate court of Phelps county, Mo., as aforesaid. August 12, 1893, Smith, Glasser, and Hunt conveyed the Moose lode to the Moose Gold Mining Company, appellee herein.

It is conceded that no letters of administration were taken out in Colorado, in which state the property in controversy is situated, and appellants base their claims upon the contention that the probate court of Phelps county, Mo., was without jurisdiction to make the orders of sale above recited, and that the deeds under which defendants claim were void. On the date these actions were originally brought the plaintiff Nellie A. Brene Jewell was 33 years of age, 15 years above her majority; Flora S. Brene Spindler was 32 years of age, 14 years above her majority; Zona F. Brene Smail was 28 years of age, 10 years above her majority; and the youngest of the complainant heirs, Bessie M. Brene, was 26 years of age, 8 years above her majority. In the bills it is alleged that complainants had no actual knowledge of the proceedings in the probate court; that they received no part of the proceeds of the sales; that they lived in Phelps county until their majority; that thereafter, on dates not stated, they took up their places of residence in different states, other than the state of Colorado; that they first became aware of their interest in the mining claims in suit in June, 1913, at which time, they allege, a representative of the holders and owners of the bonds secured by trust deed upon the Ben Harrison lode called upon the complainant Nellie A. Brene Jewell, and sought to obtain from her and her codefendants quitclaim deeds for the alleged purpose of correcting some irregularities in the early transfers of this property. It is further alleged that the Moose Gold Mining Company, the Trilby Mines Company, and the officers, solici

tors, agents, and employés of said companies have been contriving and confederating together to defraud plaintiffs of their rights and interests in said claims, but no facts are stated to support a charge of fraud against either the administrator and guardian or the defendants in these actions, unless such is to be inferred from the alleged want of authority in the former and the assertion of title and the enjoyment of the properties by the latter.

In their answers below the defendants set up section 4073, R. S. of Colorado, which provides:

"Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not later."

Also section 4089, which provides:

"That every person in actual possession of lands under claim and color of title, made in good faith and who shall for seven successive years pay all taxes legally assessed on such lands shall be held and adjudged to be the legal owner of said lands according to the purport of his paper title."

[1] They also urged the laches of the plaintiffs in bar of their recovery, and prayed that the bills be dismissed. The cases were set down as upon motions to dismiss upon the defenses thus pleaded, and upon hearing said motions were sustained, and the bills dismissed accordingly. From the decrees thus entered these appeals are taken. With respect to section 4089 of the Colorado Statutes, providing that legal ownership shall be adjudged where all taxes legally assessed shall be paid for seven successive years under claim of title made in good faith, we think the court below was clearly right in holding that this is an affirmative defense which it is the duty of defendants to set up and establish, and that such a defense would not justify a dismissal upon motion.

Appellants contend that the five-year limitation provided by section 4073 has no application, because this section, as construed by the courts of last resort in Colorado, has no reference to and imposes no limitation upon actions affecting realty only. Defendants insist that, although the bill is entitled as one to quiet title, nevertheless it is, in effect, one to establish a trusteeship on the part of the defendants; that section 4073, by its express terms, has application to such actions; and that the holding in Colorado is not to the contrary. This was the view to which the trial court inclined, and an examination of the cases cited persuades us that this view involves a question of interest and substance. Harding v. Burris, 52 Colo. 132, 119 Pac. 1063; Munson v. Marks, 52 Colo. 553, 124 Pac. 187; Munson v. Keim, 53 Colo. 576, 127 Pac. 1026; Empire R. & C. Co. v. Zehr, 54 Colo. 185, 129 Pac. 828; Rowe v. Mulvane, 25 Colo. App. 502, 139 Pac. 1041–1044. Nevertheless it is conceded that in the application of the doctrine of laches the settled rule is that federal courts of equity are not bound by, but that they usually act or refuse to act in analogy to, statutes of limitation relating to actions at law of like character. Kelley v. Boettcher et al., 85 Fed. 55, 29 C. C. A. 14; Redd v. Brun, 84 C. C. A. 638, 157 Fed. 190. We prefer not to base a decision upon the construction of a state statute of limitation, unless the applica-

tion of its terms and provisions is clear and practically unmistakable. It is necessary to consider, therefore, whether the delay of complainants in bringing these actions is such inexcusable laches as to bar relief.

[2, 3] Generally speaking, courts of equity, acting on their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere in attempts to establish a stale trust, except where the trust is clearly established and the facts have been fraudulently and successfully concealed by the trustee from the knowledge of the cestui que trust. Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836. There is no sufficient, if indeed any, substantial allegation of fraud in the bills. Complainants allege that they had no knowledge of the rights here asserted until in June, 1913. But ignorance which is the effect of inexcusable negligence is no excuse for laches, and knowledge of facts and circumstances which would put a person of ordinary prudence and diligence on inquiry is, in the eyes of the law, equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose. Swift v. Smith, 25 C. C. A. 154, 79 Fed. 709-713. It is not denied that complainants knew that an administrator was appointed in the probate court of Phelps county. They knew also of the appointment of their guardian and curator. The bill avers:

"That if the guardian said anything to her [Nellie] with reference to what he was doing, she has no recollection of his having done so, and would not have comprehended what he meant if he had spoken to her about it."

But, as was said in Swift v. Smith supra:

"She was not the victim of any actual fraud or of any concealment. All the facts on which she now relies for relief were spread upon the records of the probate court, * * * open and ready for her inspection."

All the complainants had many years, after they became of age, to inspect these records. The proceeding of administration is in the nature of a proceeding in rem, and in a sense these complainants were parties thereto.

"The possession of the means of knowledge is equivalent to knowledge itself. A party who has the opportunity of knowing the facts of which he complains cannot avail himself of his inactivity, and thus escape the imputation of laches. The grounds of attack against the validity of the orders of sale and the executor's deeds were matters of record." Williamson v. Beardsley, 69 C. C. A. 615, 618, 137 Fed. 467, 470.

In that case, as in Swift v. Smith, supra, this court has held that parties to proceedings of this nature in probate courts are parties thereto, and are bound by a knowledge of what such records disclose. While the lapse of time alone ordinarily is not sufficient to constitute a defense, nevertheless courts take into consideration not only that the peace of society requires the discouragement of antiquated and stale demands, but also the situation of the parties which renders the prosecution of such suits inequitable. Such a situation is discussed by the Supreme Court in Patterson v. Hewitt, 195 U. S. 309, 25 Sup. Ct. 35, 49 L. Ed. 214, wherein it is said:

"While it is true the court might impose upon the appellants the payment of their proportionate share of labor and expenses as a condition of relief, it could not compensate the defendants for the risk assumed by them that their exertions would come to naught. There is no class of property more subject to sudden and violent fluctuations of value than mining lands. A location which to-day may have no salable value may in a month become worth * * * millions. Years may be spent in working such property apparently to no purpose, when suddenly a mass of rich ore may be discovered, from which an immense fortune is realized. Under such circumstances, persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced."

At the time these claims were sold under orders of the probate court they consisted of little more than mere locations. The interest of Brene was attempted to be purchased for what may well have been considered a fair price at that time. Since then, it would appear from the bill that the properties have been developed with all the expense, exertion, and risk incidental to mining enterprises. That ultimate success may have been achieved and large returns realized cannot alter the situation. The complainants, charged with knowledge of what transpired in connection with the administration of the estate of their deceased father, as disclosed by the public records of the county in which he died, and in which they arrived at years of discretion, have since allowed long years to pass without seeking to ascertain or pursue any rights or remedies which might have been theirs if seasonably invoked. We think the trial court properly ruled that they are barred by their laches in this regard.

It results that the decree dismissing the bills should be affirmed; and it is accordingly so ordered.