EQUITABLE TRUST CO. OF NEW YORK v. DENVER & R. G. R. CO.*

(District Court, D. Colorado. November 11, 1920.)

No. 6782.

1. **Judgment** ⟷701—**Stockholders concluded by judgment against corporation.**

A corporation represents its stockholders in litigation in which it is engaged, so that a judgment for or against the corporation is as conclusive against its stockholders as against itself.

2. **Judgment** ⟷713(2)—**Conclusive between parties as to all matters that could have been litigated.**

A judgment is conclusive in a subsequent action between the same parties on the same cause of action, in the absence of fraud or collusion in the conduct of the action on which it is founded, not only as to every defense that defendant made in that action, but also as to every defense that it might have made.

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Order affirmed 271 Fed. 49.

3. **Judgment ☞386(7)—Right to avoid must be diligently pursued.**

The right to avoid a judgment or decree of the court for fraud is conditioned on diligence in discovering the fraud, and in presenting the proof of it to the proper tribunal and asking for relief.

4. **Judgment ☞386(7)—Stockholders held not diligent in seeking to avoid judgment against corporation.**

Where a judgment was rendered against the crporation on a guaranty of the bonds of another corporation, and the opinion on which the judgment was based was published, as was also the opinion of the Circuit Court of Appeals affirming the judgment, and, after certiorari had been denied by the Supreme Court, property was sold to satisfy the judgment, and judgments were obtained thereon in other jurisdictions, and property seized for sale therein, a petition by the stockholders of defendant corporation for leave to intervene in proceedings for the sale under a subsequent judgment, more than three years after the original judgment, and to delay the sale until they could intervene in the original proceeding and attack the judgment for fraud, shows such want of diligence by petitioner as to bar the right to relief against the original judgment, and therefore the sale will not be further postponed.

5. **Notice ☞6—Leading to inquiry is notice of facts inquiry would show.**

Notice of facts which would incite a person of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop.

6. **Railroads ☞25—Stockholders' petition held not to show fraud in guaranty of bonds of another company.**

A petition by a stockholder of a railroad corporation, attacking for fraud a judgment against the corporation on its guaranty of the bonds of another railroad company, which showed that the latter railroad was constructed for the benefit of the defendant corporation, which owned most of its stock, and which would thereby obtain an outlet to the Pacific Coast, not only fails to show fraud, but shows that there was no fraud in the guaranty.

7. **Corporations ☞318—Interlocking directorates not fraud per se.**

Interlocking directorates of different corporations are not fraudulent per se, but are denounced only when used to accomplish a fraudulent end.

8. **Corporations ☞211(6)—Petition of stockholders held not to show fraud in conduct of defense by corporation.**

A petition by stockholders to have a sale of corporation's property under judgment against it delayed until the stockholders could investigate suspected fraud by the corporation in failing to present a defense *held* not to show grounds for suspecting the fraud.

In Equity. Suit by the Equitable Trust Company of New York as trustee, intervener and substituted plaintiff, against the Denver & Rio Grande Railroad Company. On petition by Jefferson M. Levy and other stockholders of defendant company for postponement of the sale and for leave to intervene. Petition denied.

George Welwood Murray, of New York City, William V. Hodges, of Denver, Colo., and F. W. M. Cutcheon, of New York City, for plaintiff.

Arthur M. Wickwire, of New York City, and John L. Webster, of Omaha, Neb., for petitioners.

Before SANBORN, Circuit Judge, and LEWIS, District Judge.

PER CURIAM. Mr. Jefferson M. Levy and others, stockholders and members of a committee for stockholders of the Denver & Rio

Grande Railroad Company, the judgment debtor herein, present a petition for leave to intervene in this suit, to become parties thereto, and for an adjournment of the sale of the property of the railroad company, which is set by the decree herein for November 20, 1920, to enable these petitioners to present and litigate in this suit or elsewhere their claim for an avoidance and injunction against the enforcement of the judgment of the United States District Court for the Southern District of New York, in favor of the Trust Company and against the Denver & Rio Grande Railroad Company, on its guaranty of the payment of the $50,000,000 mortgage bonds of the Western Pacific Railroad Company, rendered on June 14, 1917 (244 Fed. 485), and affirmed on appeal by the United States Circuit Court of Appeals of the Second Circuit on January 3, 1918 (250 Fed. 327, 162 C. C. A. 397). Reference is made to the statements and opinions in the cases just cited for the origin and history of the liability of the Denver Company on which that judgment rests, and of the litigation concerning it prior to 1918. These stockholders seek to avoid that judgment in order to secure a foundation on which to base a suit to set aside the judgment of this court upon the New York judgment in favor of the Trust Company and against the Denver Company for $36,515,038.18, which was rendered by this court on January 7, 1918. And they seek to avoid the latter judgment for the purpose of setting aside the decree in this suit for the sale of the property of the Denver Company and the application of its proceeds to the payment of the amount still remaining unpaid on the latter judgment, which was found and adjudged by the decree herein to have been $36,192,655.78 on September 25, 1920. These judgments and this decree are adjudications of these courts in litigated, carefully considered cases to the effect that the Denver Company was and is justly indebted to the Trust Company in the amounts above stated, that as against the Denver Company and its stockholders it was entitled to payment on June 14, 1917. It has already been delayed in obtaining this payment and this application is made more than three years since that date. The judgments which have been referred to may not be lightly regarded, and this delay ought not to be prolonged, unless these stockholders have shown that there is reasonable cause to believe that they are entitled to and will be able to secure an avoidance of the New York judgment and consequently of those founded upon it.

[1, 2] The parties to the New York judgment were the same as the parties to this suit. They were the Trust Company as trustee for the bondholders, and the Denver Company which guaranteed the payment of the bonds. The basic right or cause of action was the same, the liability of the Denver Company on its guaranty of the $50,000,000 of mortgage bonds in each of these cases. A judgment for or against a corporation is as conclusive against its stockholders as against itself, because a corporation is formed and empowered to sue and be sued for its stockholders and it represents them in the litigation in which it is engaged. Since, where two actions are brought between two parties upon the same cause of action, the first judgment, in the absence of fraud in the conduct of the action on which it is founded, estops the

defendant from maintaining, not only every defense that it made in that action, but also every defense that it might have made, the New York judgment estops the Denver Company and the petitioners, its stockholders, from maintaining in this suit, in the absence of fraud in the conduct of the suit which resulted in that judgment, not only every defense that it made, but also every defense that it or its stockholders might have made in that action. The right of a stockholder to avoid a judgment against his corporation is derived from it, rises no higher than the right of that corporation, and may be worked out only in the latter's right. So it is that these stockholders are estopped from maintaining any defense to the New York judgment, or any ground for its avoidance, and from intervening for that purpose on the ground that the guaranty was unfair, unreasonable, obtained by undue influence, interlocking directors, or pernicious collusion, until they first clearly show that there was fraud or pernicious collusion by the Trust Company or the bondholders it represents in the conduct of the action which resulted in that judgment. Forbes v. Memphis, E. P. & P. R. Co., 9 Fed. Cas. 408, 418, Case No. 4,926; Farmers' Loan & Trust Co. v. Kansas City, W. & N. R. Co. (C. C.) 53 Fed. 182, 186.

[3, 4] Another indispensable condition of the right to avoid a judgment or decree of a court for fraud is diligence in discovering it and in presenting the proof of it to the proper tribunal and asking relief from it. The alleged fraud on which these stockholders rely to avoid this New York judgment is the fraudulent failure of the Denver Company to interpose certain alleged defenses to the cause of action upon the guaranty upon which that judgment is founded. A long time has elapsed since the New York judgment was rendered on June 14, 1917, and it was not until within three months of this day that these stockholders made any complaint of the conduct of the defense of that action or gave any warning of any defect in that judgment. Conscious of their delay, they aver in their petition that they did not discover the alleged facts they now present until within these three months. They fail, however, to allege why they did not discover them, from what source they did discover them, why they did not discover them earlier, and they fail to plead any facts in this regard which persuade that they could not as easily have discovered and presented them to the New York court within three months of that judgment in 1917 as they could after the 1st of September, 1920. The excuse they plead for the failure to make the discovery and present the alleged grounds for the avoidance of the New York judgment does not appeal with persuasive force to the conscience of a chancellor.

The appropriate time and place for these petitioners to have assailed that judgment on the grounds they now urge was in the court that entered it, by motion or petition to set it aside and to permit the stockholders to defend against the cause of action there stated, or by a bill in equity in that court to avoid the judgment and enjoin its enforcement. The guaranty upon which that judgment is founded was assumed by the Denver Company in the year 1908. On May 17, 1917 (244 Fed. 485), in a suit to which the Equitable Trust Company, as trustee for the bondholders, was the plaintiff, and the Denver Company

was the defendant and in which it answered and strenuously contended for various reasons that it was not liable on the guaranty, the United States District Court for the Southern District of New York, in an elaborate opinion which was published to the world, adjudged that it was so liable. 244 Fed. 506. A judgment was rendered on June 14, 1917, in favor of the Trust Company and against the Denver Company for $38,270,343.17 in that suit. An appeal was taken therefrom, briefs and arguments of eminent counsel were submitted to the Court of Appeals of the Second Circuit, and in an elaborate opinion, which was also published, it affirmed that judgment on January 3, 1918. 250 Fed. 327, 162 C. C. A. 397. The Denver Company petitioned the Supreme Court for a writ of certiorari to reverse that decision, and that petition was denied on April 15, 1918. 246 U. S. 672, 38 Sup. Ct. 423, 62 L. Ed. 932. Under a writ of execution on the judgment in this New York court property of the Denver Company was seized, and on October 4, 1917, was sold for $3,032,400, and the proceeds applied to the payment of the judgment.

On December 17, 1917, the Trust Company commenced an action upon that judgment against the Denver Company in the Supreme Court of the state of New York and on March 13, 1918, a judgment was rendered in that court in favor of the Trust Company and against the Denver Company for $36,908,529.14. Property of the Denver Company in New York was sold under writs of execution upon that judgment in June, 1918, and on May 26, 1920, and the proceeds of those sales were applied to the payment of that judgment. On August 23, 1917, the Trust Company, as trustee for the bondholders, brought an action in this court against the Denver Company upon the judgment against it in the United States District Court in New York, and on January 7, 1918, recovered a judgment against the Denver Company for $36,515,038.16. An execution was issued on that judgment and returned unsatisfied. On January 17, 1918, this suit in equity was instituted against the Denver Company to secure the application of all the remainder of its property to the payment of its debt. The Trust Company, as trustee for the bondholders, intervened and set up the New York judgment and its claims thereunder, a receiver was immediately appointed and is now in possession of the property of the Denver Company subject to the mortgages and liens upon it. Later the Trust Company was substituted for the original plaintiff and the decree in this suit was rendered in September, 1920, for the sale of the equity of the Denver Company in its property on November 20, 1920. During all these proceedings from 1908 down to September, 1920, the stockholders, who now ask to have this sale postponed and to intervene in this suit to set aside and enjoin the enforcement of the New York judgment, have made no objections to any of the proceedings and have presented none of the claims or defenses they have suggested for the first time since September 1, 1920. They now invoke the action of this court of equity to stay the sale and permit a retrial of the issue adjudged in the United States courts in New York more than three years ago.

But nothing but conscience, good faith, and reasonable diligence

can call a court of equity into action. "The strongest equity may be forfeited by laches, or abandoned by acquiescence." Peebles v. Railroad Co., 8 Serg. & R. (Pa.) 493; Sullivan v. Railroad Co., 94 U. S. 806, 811, 24 L. Ed. 324; Swift v. Smith, 79 Fed. 709, 712, 25 C. C. A. 154.

[5] Notice of facts which would incite a person of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop. Coder v. McPherson, 152 Fed. 951, 953, 82 C. C. A. 99; Wood v. Carpenter, 101 U. S. 135, 140, 25 L. Ed. 807; Parker v. Kuhn, 21 Neb. 414, 421, 426, 32 N. W. 74, 59 Am. Rep. 838; Rugan v. Sabin, 53 Fed. 415, 418, 3 C. C. A. 578.

The facts in Leavenworth v. Chicago, R. I. & P. Ry. Co., 134 U. S. 688, 707, 709, 10 Sup. Ct. 708, 33 L. Ed. 1064, and (C. C.) 25 Fed. 219, 231, are very similar to those averred in this case. After a decree of foreclosure and sale had been made Leavenworth county, a creditor of the defendant brought a suit in equity to set aside the decree on substantially the same grounds asserted in this case. That suit was tried on its merits and dismissed by Mr. Justice Miller with these remarks, which were adopted and approved by the Supreme Court on appeal:

"Though it may be said that the Southwestern Company made no such defense because it was in the control of the Rock Island Directory, which is plausible, if not sound, it is to be observed that this suit was in the court for more than a year; that it is hardly possible that the authorities of the county of Leavenworth did not know of its pendency and who were the directors in its own company; and if it had at any time appeared in that court and sought to make the defense it now sets up it would have been permitted to do so. * * * The case is one not uncommon of a road completed, which in its first years did not earn enough money to pay its running expenses, its necessary repairs, and the interest on its bonded debt. Such roads have often been sold out under foreclosure proceedings, and passing into other hands have become successful and profitable. The original owners see then, when it is too late, that they permitted valuable property to pass from them which they would gladly retain. But courts of equity do not sit to restore opportunities or renew possibilities which have been permitted to pass by the neglect, the ignorance or even the want of means of those to whom they were once presented."

In Sanger v. Upton, Assignee, 91 U. S. 56, 59 (23 L. Ed. 220), Sanger was a stockholder in the Great Western Insurance Company. That corporation was adjudged a bankrupt on February 6, 1872; on April 11, 1872, the bankruptcy court made an order that on or before August 15, 1872, Sanger and other stockholders pay to the assignee in bankruptcy specified amounts which it adjudged to be the portions of their subscriptions unpaid. She failed to pay and the assignee brought an action for the amount the bankruptcy court found' due from her. She sought to defend that action on the ground that she did not owe that amount. The Supreme Court said:

"She might have applied to the District Court to revoke or modify the order. Had she done so, she would have been entitled to be heard; but it does not appear that any such application was made. As a stockholder, she was an integral part of the corporation. In the view of the law, she was before the court in all the proceedings touching the body of which she was a member. In

point of fact, stockholders in such cases can hardly be ignorant of the measures taken to reach the effects of the corporation. If they choose to rest supine until cases against them like this are on trial, they must take the consequences. Not having spoken before, they cannot be permitted to speak then, especially to make an objection which looks rather to the embarrassment and delay than to the right and justice of the case. A different rule would be pregnant with mischief and confusion."

To the same effect is Hutchinson v. Philadelphia G. S. S. Co. (D. C.) 216 Fed. 795.

There is no escape from the conclusion that, certainly as early as October, 1917, when sales of the property of the Denver Company under the New York judgment in the United States court commenced, these stockholders must be held to have had notice of the facts which would have incited a person of ordinary prudence under similar circumstances to an inquiry which, if pursued with reasonable diligence, would have developed the facts which these stockholders aver they discovered between September 1, 1920, and November 1, 1920. The failure and insolvency of the Western Pacific Company, the default in 1915 in payment of interest on the $50,000,000 mortgage bonds which their corporation had guaranteed, the foreclosure of the mortgage which secured them, and the sale of the property of the Western Pacific Company, the action of the Trust Company against their corporation and the judgment of $38,000,000 against it in the New York court in 1917, and its affirmance by the Circuit Court of Appeals in January, 1918, were matters of public notoriety, of which an ordinarily prudent stockholder of the Denver Company would not have been ignorant, and they were sufficient to incite such a person to an inquiry into the reasons for them which, if properly pursued, would have readily developed the personnel of the board of Directors of the Missouri Pacific, of the Western Pacific, and of the Denver Company, their relations and their acts, and the defenses, if any, now suggested to the action on the guaranty and the failure to present such defenses to the court. This and other courts have rendered judgments, sold and disposed of property of the Denver Company, and distributed its proceeds in reliance upon the justice and validity of that judgment, while these petitioners have stood by in silence and given no notice or warning that there was any defect or legal or equitable objection thereto until within two months of this date. The established principles and rules of equity, the decisions of the Supreme Court, and the long silence and delay of the petitioners so conclusively estopped them here that there is no reasonable cause to believe that either in the United States District Court of the Southern District of New York, where they now suggest they desire to present their petition or bill to avoid the judgment of June 14, 1917, nor in any other court of equity, can they succeed in their attempt to set it aside, and on this account it would be useless to permit them to intervene or to delay the sale.

But even if we were permitted to ignore the principles just stated and rested our conclusion on the facts set up in the petition and adduced at the hearing by affidavits and testimony, a like result must follow. These facts, some of which are asserted only on information and belief, fall into two classes: (a) Interlocking directorates of the Missouri

269 F.—63

'Pacific, Denver & Rio Grande, and Western Pacific Railways, each dominated by George J. Gould and associates; and (b) a personal interest of George J. Gould and associates in bonds of the Western Pacific secured by its mortgage, which caused them to bring about a foreclosure of that mortgage, resulting in a deficit for which the judgment against the Denver & Rio Grande Railroad Company was obtained.

[6] As to the first set of facts they may be summarized in this way: The Missouri Pacific extended from St. Louis to Pueblo, Colo., where it connected with the Denver & Rio Grande Railroad, which latter, with its subsidiary (Rio Grande Western, later consolidated with the Denver & Rio Grande), extended from Pueblo to Salt Lake City or Ogden, Utah. The two roads, while thus under the control of Gould and associates, decided that it was to their interest to extend to the Pacific Coast, and for that purpose Gould and associates organized or caused to be organized the Western Pacific Railroad Company, so that it might build and own the line from the connecting point in Utah to the coast, and the Denver & Rio Grande took substantially all of the Western Pacific's issued stock. In order to raise the necessary funds the Western Pacific issued $50,000,000 of its first mortgage bonds, payment of which and the interest thereon was in practical effect guaranteed by the Denver & Rio Grande; it also purchased $25,-000,000 of the Western Pacific second mortgage bonds, and from time to time thereafter took Western Pacific notes for funds advanced to it as needed to the aggregate of several millions more. In 1914 the venture having become more costly and burdensome to the Denver & Rio Grande than had been anticipated, it was believed that something must be done to relieve the Denver & Rio Grande from the constant drain on its treasury. Reorganization of the Western Pacific was considered. The Denver & Rio Grande continued to keep its guaranty by the payment of the semiannual interest on the $50,000,000 Western Pacific bonds until March 1, 1915, when there was default, and fore-closure at once followed.

[7] It must be apparent to every one that these facts standing alone wholly fail to establish fraudulent conduct on the part of the Denver & Rio Grande directorate, or to even raise a strong suspicion of fraud. They are more consonant with uprightness of purpose than otherwise. Interlocking directorates are not fraudulent per se. They are denounced only when used as a means to the accomplishment of a fraudulent end, and it is not contended that the Western Pacific and its construction under the condition named and the extension of credit to it by the Denver & Rio Grande, under permissible statutes of both Utah and Colorado, was the accomplishment of a fraudulent end.

[8] As to the other set of facts it must be said in fairness to counsel for petitioners that they are not directly alleged. They are only intimated with a request that 60 days or so be given petitioners within which they may investigate and decide whether they can then make such allegations with the hope of establishing them by proof. But affidavits of those in a position to know have so completely met and swept away that ground that further pursuit and inquiries are hopeless, and the basis for the petition in that respect seems now groundless.

Another and different ground on which some reliance is placed is the claim mildly put in the petition that there was extraneous fraud in defense of the suit in which the judgment was had in the United States District Court for the Southern District of New York, which was affirmed by the Court of Appeals of the Second Circuit. Here again it is said that Gould induced the fraud by having his own personal counsel defend, and it is said in argument that a defense that would have defeated the cause of action and prevented a recovery against the Denver & Rio Grande on its contract of guaranty was purposely withheld. That defense was the claimed fraud which we have above discussed and think groundless. But, as to this, the petitioners offered no proof; whereas in opposition there is uncontradicted proof that the defense in that suit was under the direction and control of able and skilled counsel of the highest character and integrity who had no relation or connection with the Gould interests, were not his counsel in any respect, and who followed their own judgment in every particular in defending the cause, gave to it their very best effort and untiring attention, and were at all times aided by the defendant in every way and promptly that it could assist.

Our conclusion is that petitioners have failed to present any facts as a basis on which a court of equity would or could cancel and annul the New York judgment, that the facts necessary for that purpose do not exist and never occurred, and hence are not discoverable, and that now to put off the sale is only to defer the inevitable, without benefit to any one. This railroad has now been under receivership for almost three years and more than two-thirds of that time it has been operated by the government. Its physical condition has deteriorated both in rolling stock and safety of roadbeds, and we believe that the order of sale should stand.

The prayer of the petitioners in their petition must be and is denied.