## BEERS et al. v. EQUITABLE TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Eighth Circuit. February 15, 1923.)

No. 6002.

1. **Judgment ⊜⇒672—Stockholders intervening to prevent confirmation of receivership sale bound by decree on attempted intervention in prior litigation by other stockholders.**

Where a trust company, mortgagee of railroad properties, payment of which mortgage was guaranteed by the defendant railroad procured judgment against defendant in the United States District Court of New York, and in a suit in the federal court in Colorado procured judgment for the amount remaining unpaid on the New York judgment, and later intervened and was substituted as plaintiff in a creditors' action in Colorado for the appointment of a receiver for defendant, in which action certain of defendant's stockholders intervened for the purpose of postponing sale, other stockholders, attempting to intervene for the purpose of objecting·to a confirmation of the sale of defendant's properties, were bound by the decrees affirming the New York decree and denying intervention of stockholders in the Colorado case.

2. **Railroads ⊜⇒192—Stockholders not permitted to intervene to prevent confirmation of sale on receivership proceedings on insufficient showing of value.**

On a creditors' suit, in which complainant trust company intervened and had itself substituted, properties of defendant under receivership sale were sold for $5,000,000, and complainants, stockholders, attempted to intervene to prevent confirmation of such sale. The property had long been in litigation, unsuccessfully resisted by stockholders, and the trust company successively obtained judgments establishing its claim. *Held* that, where there was no showing as to the value of the property, and the objecting stockholders declined to furnish $100,000 bond to procure a resale, their contention that the property was worth $80,000,000 was not substantiated, and the evidence of an unconscionable sale not sufficient to warrant refusal to confirm.

Appeal from the District Court of the United States for the District of Colorado.

Suit in equity by the Equitable Trust Company of New York, as substituted plaintiff, against the Denver & Rio Grande Railroad Company. Petition by James L. Beers and others, stockholders of defendant company, for leave to intervene for the purpose of objecting to a confirmation of the sale of defendant's properties was denied, and petitioners appeal. Affirmed.

John Lee Webster, of Omaha, Neb. (Arthur M. Wickwire and Daniel W. Blumenthal, both of New York City, and Arthur Berenson, of Boston, Mass., on the brief), for appellants.

George Welwood Murray and John F. Bowie, both of New York City (Franklin W. M. Cutcheon and William Roberts, both of New York City, on the brief), for appellees.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KENYON, Circuit Judge, and POLLOCK and VAN VAL-
KENBURGH, District Judges.

PER CURIAM. Certain stockholders of the Denver & Rio Grande
Railroad Company appeal from the action of the United States Dis-
trict Court for the District of Colorado, refusing them leave to inter-
vene in a suit pending of "Equitable Trust Company of New York,
as Trustee, Intervener and Substituted Plaintiff, v. Denver & Rio
Grande Railroad Company, Defendant," for the purpose of objecting
to a confirmation of the sale of the properties of the Denver & Rio
Grande Railroad Company. Appellants are representatives of a stock-
holders' protective committee.

[1] At the threshold of this case we are met with the claim on the
part of appellees that the appeal is from a decree in a proceeding to
which appellants were not parties. It is apparent that the intention of
the appeal is to secure a review here of the action of the trial court in
refusing to permit the petition of said stockholders to be filed for the
purpose of making objection to confirmation of the sale to be made
under the order of the United States District Court of Colorado.

While from a strictly technical consideration of the entire proceed-
ings there is foundation for the argument that the appeal is from the
decree confirming the sale in proceedings to which appellants were
not parties, yet we think assignment of error No. 5 does raise the ques-
tion as to the action of the court in refusing permission to said stock-
holders of the Denver & Rio Grande Railroad Company, appellants
herein, to file their petition of intervention for the purposes therein
stated, and we shall so treat it.

The questions presented in brief and argument are numerous. How-
ever, in our judgment, the decisions of the courts, to which reference
will be made, on these questions, amounting to an estoppel as to many
of them, limit our consideration to rather a narrow compass.

This case and its companion cases, No. 5934, 286 Fed. 886, and No.
6003, 286 Fed. 883, opinions in which are this day filed, are the culmina-
tion of a long series of transactions more or less intricate between a
number of railroad companies, to wit, the Missouri Pacific Railway
Company, the Western Pacific Railway Company, the Western Pa-
cific Railroad Company, the Denver & Rio Grande Western Railroad
Company, and the Denver & Rio Grande Railroad Company.

In 1908, the Denver & Rio Grande Railroad Company and the Rio
Grande Western Railroad Company were consolidated under the name
of "the Denver & Rio Grande Railroad Company" (the consolidated
company being generally referred to as the "Denver Company"); the
consolidated company assuming the obligations of what is known as
contract B, hereinafter referred to, and being the basis of the subse-
quent litigation. We do not deem it necessary to enter into a long his-
tory of these transactions. They are set out fully in the decision of
this court in Levy et al. v. Equitable Trust Co. et al., 271 Fed. 49. The
various matters involved are also fully discussed in other cases, viz.:
Equitable Trust Co. v. Western Pac. Ry. Co. (D. C.) 231 Fed. 478;
Equitable Trust Co. of New York et al. v. Western Pacific Ry. Co.

et al., 231 Fed. 571, 145 C. C. A. 457; Equitable Trust Co. of New York v. Western Pac. Ry. Co. et al. (D. C.) 233 Fed. 335; Equitable Trust Co. of New York v. Western Pac. Ry. Co. et al. (D. C.) 236 Fed. 814; Equitable Trust Co. of New York v. Western Pac. Ry. Co. (D. C.) 244 Fed. 485; Equitable Trust Co. of New York v. Denver & Rio Grande R. R. Co., 250 Fed. 327, 162 C. C. A. 397; Denver & Rio Grande R. Co. v. Equitable Trust Co. of New York, as Trustee, etc., 246 U. S. 672, 38 Sup. Ct. 423, 62 L. Ed. 932; and Equitable Trust Co. v. Denver & Rio Grande Railroad Co. (D. C.) 269 Fed. 987.

The following matters, however, should, as an aid to a clear understanding of the case, be briefly stated: June 14, 1917, appellee the Equitable Trust Company of New York secured judgment in the District Court of the United States for the Southern District of New York against the Denver Company in the sum of $38,270,343.17. The liability of the said Railroad Company arose out of what was known as contract B, which was a contract made and entered into between the Denver & Rio Grande Railroad Company and the Rio Grande Western Company, parties of the first part, the Western Pacific Railway Company, party of the second part, and the Bowling Green Trust Company, as trustee, party of the third part; such contract being, in brief an effort to place the credit of the Denver & Rio Grande Railroad Company behind the Western Pacific Railway Company in its efforts to build from Salt Lake City to San Francisco. The Trust Company which was trustee in the mortgage of the Western Pacific Railway Company and the third party in contract B, was succeeded by the Equitable Trust Company of New York, appellee in this case. Prior to the New York judgment there had been a foreclosure in California against the Western Pacific, and the judgment in the United States District Court in New York represented the deficiency after the proceeds of the California foreclosure had been applied to the indebtedness. The New York case was appealed to the Circuit Court of Appeals in the Second Circuit, which court remanded the same, with instructions to transfer to the law side of the court, and, the case being so transferred, the judgment was affirmed. Equitable Trust Co. of New York v. Denver & R. G. R. Co., 250 Fed. 327, 162 C. C. A. 397.

August 23, 1917, an action was brought in the United States District Court of Colorado by the Equitable Trust Company based on the judgment secured in the federal court of New York, hereinbefore referred to, and judgment was entered in January, 1918, against the Denver & Rio Grande Company for $36,515,038.68, being the amount of the judgment in the New York case less certain credits resulting from executions.

January 17, 1918, suit was brought in the same court by a creditor of the Denver Company, asking the appointment of a receiver and the administration of the company's assets. The Trust Company intervened and receivers for the Denver Company were appointed. Later the Trust Company was substituted as plaintiff in the cause. In this action the court found that the Denver Company was insolvent, and also found a balance due on the New York decree, and entered an or-

der for the sale of all the Denver properties, excepting a certain claim against the United States.

Later certain stockholders of the Denver Company attempted to intervene in the Colorado suit for the purpose of securing a postponement of the sale that they might have an opportunity to investigate the New York judgment. This application was denied and an appeal was then taken to the Circuit Court of Appeals for the Eighth Circuit. Levy et al. v. Equitable Trust Co. et al., 271 Fed. 49 (8th C. C. A.). The substance of the decision of the Circuit Court of Appeals was that on the showing made the stockholders could not intervene; the court holding that the New York judgment was valid, that the judgment of the Colorado court was valid, that it could be enforced by the decree of sale in the creditors' suit, that petitioners were guilty of laches, and that the sale should not be postponed. In that case, and in this, the complaining parties are practically the same, representing the same stockholders' protective committee, although different members of the committee complain here from those complaining there. It is our judgment that appellants are bound by this decision, to the extent, at least, of questions there decided, which are now raised on this appeal.

The Equitable Trust Company had a valid judgment against the Denver Company; had the right to enforce his judgment in the Colorado court. It obtained its judgment in the United States District Court of Colorado based on the New York judgment. The court in Colorado could not refuse to recognize the judgment secured in the court in New York. That judgment stands as valid and binding. The Trust Company, having its judgment, was substituted as plaintiff in the creditors' suit in Colorado, and as such had its valid claim against the Denver Company and the right to its enforcement.

The question of interlocking directorates is raised and discussed in this and the companion cases. We do not regard it as important in this case, as the question here is narrowed to the alleged right to intervene and object to the sale. The question of interlocking directorates, if a defense, and the presumptions, if any, that would arise therefrom, could have been raised in the New York case, if they were not in fact so raised; and not only the Denver Company, but the stockholders, in the absence of extraneous or collateral fraud, are bound as to all questions which could have been there properly determined. The only objections which it seems to us could be asserted under this record under any circumstances by stockholders on the application for leave to intervene and object to the confirmation would be solely as to the manner in which the sale was conducted and the amount of the bid. Several estoppels, as heretofore indicated, bar consideration of the other questions raised.

[2] The statement, frequently made in argument and brief, that the equity sold was worth $80,000,000 and brought only $5,000,000, of course, challenges attention. If such were the fact, it would be shocking to conscience; but we are not satisfied that any showing was made as to any such value of the property. The funded debt against the

286 F.—56

property had increased from $80,000,000 to $121,000,000. During the period for the year in which the sale took place, and for the years next preceding and following, the operating income exceeded very little, if at all, operating expenses and fixed charges. The testimony shows that it would require over $10,000,000 to place the property in condition to render efficient service. It was the opinion of the receiver that the property would not bring over $100,000,000 at an outside figure, which would be $20,000,000 less than 'the mortgage debt. The value alleged by appellants seems to be somewhat exaggerated. The court below was faced with the necessity, in executing the judgment, to sell properties incumbered with tremendous indebtedness. The property evidently was not attractive on the market. The financial condition of the road failed to justify the claim of value made by appellants. The trial court was apparently desirous to protect the stockholders in any possible way, and by written order gave opportunity for further bids, on condition that bond be given in the sum of $100,000, but neither the bond nor the bids were forthcoming. A resale would not have benefited the stockholders, in view of the thirty odd million dollar judgment, unless a sum much in excess of the $5,000,000 could be secured. Evidently there was no possibility for such desired result. The stockholders did not have faith enough in securing a higher bid to risk giving bond in the sum fixed by the court. A court is not expected to do a useless thing, and under the circumstances presented an order for resale of the property apparently would be such.

In view of the entire history of this litigation with which the court was familiar, taking into consideration the judgments in New York and in the United States District Court of Colorado, and further in view of the holding of this court in the Levy Case, where parties representing the same interests attempted to intervene, and in view of the condition of the property and the money required to place it in efficient working condition, and the different opinions presented as to its real value and the apparent uselessness of the resale, we think there was no error in the court's action in refusing to permit the intervention. The objection raised as to the power of the court to order sale of the railroad and franchises in the creditors' suit without right of redemption has been considered and is not regarded as sound. Appellees' claim for damages is denied, and the order and judgment of the trial court is

Affirmed.